Good morning. May it please the court, counsel, Mr. Lau. So, your honors, the issue here is the grant of summary judgment for the city and former chief Stuart Thomas as to all of plaintiffs' Monell claims, her supervisory liability claims, and her failure to train claim where the district court misquoted controlling case law articulated by this court in the matter of Rogers v. City of Little Rock. That's of no moment. It didn't misapply the decision. Quotation from a quotation from a quotation. It's of no moment. Well, I think, Judge, that it's not merely the misquoting of the case, but the interpretation of the case through that misquoting really turns... You can argue the misinterpretation, but forget the misquoting. Fair enough, Judge. Fair enough. I was just trying to give the court an idea of what we were discussing here. We allege a failure to properly interpret the Rogers case, the Beck case, and a litany of other cases having to do with Monell liability. And we also believe that the court neglected to adhere to the requirements of Tolan v. Cotton. I want to get into the facts, and we have given a multitude of facts and evidence in this case, but I wonder if the court would indulge me for just a moment to make a larger point. I'm an avid watcher of U.S. history documentaries, and last fall I was absolutely riveted by the Ken Burns series on the Vietnam Wars. And episode eight of that wonderful series focused on the tumultuous year 1968, and specifically a portion of that was about the My Lai massacre that occurred March 16th, 1968, 50 years ago just last month. And before my friend Mr. Wilkerson protests the comparison, let me just say I'm not trying to suggest that the police misconduct that we allege in our complaint and throughout the pleadings of the summary judgment motion is akin to the atrocities that took place in My Lai back in 68. But I do think that there is a very fitting comparison to be made between the investigation of the My Lai massacre and the want of investigation that we complain about in our pleadings. You will of course recall that in the My Lai massacre close to 600 civilians were killed, unarmed civilians were killed by American G.I.s. And I think it's instructive because when the Pierce Commission was impaneled to get to the root cause of that massacre, it came to a couple of very important conclusions. The first conclusion was that there was a failure of leadership. So what's the failure in Little Rock? The failure in Little Rock, Judge, is a failure of leadership from the very top echelon all the way down. And what we mean by this and what we think that we've articulated and demonstrated in our very voluminous pleadings is that regardless of the facts, when officers in Little Rock kill, harm or threaten or engage in other types of serious police misconduct, they tend to be exonerated regardless of the facts. That wasn't what happened in this case. That is exactly what happened in this case, Judge. Well, describe what happened. Well, in this case, while it is true that problem officer Josh Hastings was terminated, I think that we proved throughout our pleadings very amply that there were. He was charged with criminal conduct, wasn't he? Correct. And that was a failed case because there was failed evidence collected. Judge, we have a problem with the internal criminal homicide investigation of police involved shootings for a variety of reasons. And while the defendants are getting where you're going to help us. Sure. Tell us about what actually happened. Absolutely. Well, the little rock defendants are very quick to pat themselves on the back because on this particular instance, for the very first time in the history of the department, someone has been charged criminally for a police involved shooting. And they say that that is proof that the system works. Well, on the surface, perhaps that is a an argument to make. But when you really look at the facts, which I have done in this case, you realize that a lot of things happened, which actually spared this very, very guilty person from going to jail. And what I mean by that is the ignoring of material witnesses who eyewitnesses who saw things in this case that would bring serious doubt to Josh Hastings story. I located two separate eyewitnesses, both of whom were known by the police at the time of the investigation, both of whom saw very incriminating behavior out of Mr. Hastings at or around the time of the shooting, as well as that of other officers, and neither of whom was sat down for a formal statement. I refer here to Nisha McEwen and Cheryl Eubanks. I had to track these women down doing the work that the police department should have done four years earlier. Both of these women said that Josh Hastings acted in a way that was consistent with cover up and of planting and concealing evidence. They had him reaching inside the car with another expert. Not only did they describe activities and conduct that is incriminating on its face, but the fact that Josh Hastings never mentioned these acts in his statement also points to untruthfulness on his part. I sat down the investigating detectives in the case and I asked them point blank. And this is throughout the talking deposition testimony that's in the record on appeal. I absolutely am judge. OK, and it is abundantly featured in our both in our brief and in the materials. These guys sat down. They fancy themselves to be the best criminal investigators in the state. When people say, why do you do in-house? Why don't you ship it out to the Arkansas State Police? They say, because we're the best. We're the best. But what they're not understanding, Judge, is that they are biased, naturally biased to protect their own. And it's natural. I would be biased if I was asked to protect my or to investigate my best friend in some matter. I couldn't assure you that I would be as objective as I should be. But that's what they do in Little Rock. I sat these detectives down and they had absolutely no answer for why certain witnesses depositions weren't taken or statements weren't taken. They had no answer for why evidence was ignored, why bloodstains weren't tested. There was a bloodstain on the gear shifter of the car in which Bobby Moore was shot and killed. Fifteen year old kid. Well, if Josh Hastings DNA or fingerprints turn up on that gear shifter, well, then we know that he manipulated it after the fact. But that was something that detectives never determined, because to determine that would get them to an answer I don't think that they wanted to have. And so when they talk about their the rigor with which they do investigations, it does not apply to their own. So there was blood test. Blood was not collected or tested. That was literally on the very mechanism allegedly held by Bobby when he was shot and killed. They did not, again, talk to witnesses, eyewitnesses. I'm not talking about character witnesses down the block. I mean, people who looked out their bedroom window at five o'clock in the morning and saw some crazy stuff and the police had contact with them. How did I find these people and get their incriminating statements? I called the phone numbers that were in the police file. That's all I did. I picked up the phone and I dialed the number and they said, hey, I've got a story to tell you why the Little Rock Police Department detectives didn't do this is anyone's but I would submit it was to protect the son of a high ranking official. You know, we started with Rogers and Rogers turned on causation. When are we going to get the causation link here? Well, the reason I brought up Rogers, Judge, is because Rogers is all Rogers. Well, Rogers stands with proposition that like Beck, which it adopts, is that an investigation has to have teeth. But there has to be a causal link between the Monel Monel failures and what happened, what what you're describing in great detail happened between Hastings and Bobby Moore. Well, I'll invoke Captain Buehle for the second time this morning. Captain Buehle testified that an investigation is only as good as the effort put into it. And we had an expert, Roger Clark, who submitted a report and affidavit that said that the LAPD's system of investigation is akin to no investigation. It alerts unscrupulous or opportunistic officers to the fact that they can engage in misconduct without with little fear of repercussion or any repercussion at all. That is moving force causation, the type of which that we need to prove. And we think we've proved that in space. So what you're telling me is that every and every investigation that's been conducted for for the statute of limitations period is subject to 1983 liability. No, no. I think what I'm trying to what I'm trying to articulate is a false choice presented by the defendants. They're saying investigation. You're good. No investigation about we're talking about whether you had sufficient evidence to avoid a summary judgment. Well, the causation aspect really wasn't even a factor in the district court's order. What the district court said is there was an insufficiency of evidence, which is kind of mind boggling to humbly speaking. There was no causation issue, but we proved causation through our expert. We proved causation through common sense. We even proved causation through Chief Thomas himself. He acknowledged that when laws aren't properly followed and aren't discipline isn't properly meted out, that unscrupulous officers will act out. It's a organized law enforcement. When there is a deficient system of discipline, unscrupulous officers will take advantage of it. We've got proverbs for it. It's called when the cat's away, the mice will play. You don't have the fox guarding the hen house. Again, we think we've proved causation in spades, but it really is a common sense proposal among other things. So the other, I think, aspect of the meal, I'm asking not to touch it back on that horrendous event, but it was predictable. The commission found that it was predictable. You might not know the number of casualties. You might not know the particular Hamlet or the date that it could have occurred, but it was predictable. And that's what we argue here. We've argued that there was a failure of leadership, which predictably caused a loss of life. And Josh Hastings exemplifies and typifies that failure of leadership. Stuart Thomas directly through his friendship with his father, Terry Hastings, kept a watchful eye out for this man as he committed misconduct after misconduct after misconduct in a mere five years until he culminated killing Bobby Moore. We shouldn't forget about the KKK meeting that was overlooked. All of these indicators are signs of I would like to say the remainder of my time, if I may, for rebuttal. All right. Thank you. Mr. Wilkerson. Thank you. Good morning. Please. The court will start with the direct causation necessary to establish liability for the city. As this court in Russell versus Hennepin County said that there must be a direct causal link between the municipal policy or custom and that alleged constitutional deprivation. In Connick, the Supreme Court said that the practices must be so persistent and widespread as to have the force of law and that the deliberate indifference standard, which is a fundamental element of this claim, is a stringent standard of proof. And we submit the judge Miller got this right, that there is no evidence of the direct causal connection. There's no evidence of similar pattern of misconduct, and there is no evidence of deliberate indifference on the part of the city. I want to make one point really quickly about Denise McEwen and Mr. Lowe mentioned that the city didn't even talk to Miss McEwen. If you look at the appendix, page 1573, the officer, the officer, Greg Seigler said, made contact with Denise McEwen, gave her a phone number. Miss McEwen stated that she was asleep when she was awoken by a loud banging noise. Miss McEwen stated that she was asleep. Oh, I'm sorry. Miss McEwen stated that she looked out and saw a vehicle had backed into her Chevy Camaro. Miss McEwen stated that she then saw a police officer at the car. In the statement of Mr. in the appellant statement of facts, they say that Miss McEwen testified that the officer was in a black uniform and was in panic mode. Her trial testimony, however, which is included in the record, she admitted that, no, I didn't I didn't see a uniform. I just assumed that it was an officer based on the voice. I only point that out to point out, one, that we did talk to Miss McEwen. Two, it wasn't the recitation of facts that Judge Miller point out aren't always entirely accurate. Now, what about the other witness, Eubanks? She didn't she didn't see the shooting either, and we talked to her, too. It's in the record. I don't have the the quote or the site right now, but she was talked to as well. I can. So, but the evidence collection in the car. Yeah, no, I will. We admitted that that gear shifter was not tested. Now, whether it was dispositive of what happened is a whole other issue. I mean, we determined that Bobby Moore was not traveling in the direction of Officer Hastings at the time of the shooting. And we Chief Thomas believes that the car is actually in reverse at the time of the shooting, which is why we found that he committed a policy violation, which is why we were to get him charged now. So whether the gear shifter was tested or not is is a no consequence to the fundamental question of a facade investigation, which is, as Rogers put it, whether the facade covers up a violent pattern of a violent pattern of the officers. Bobby Moore, Bobby Moore investigation, if it's an extension of our faulty practices, is, like I said in the brief exhibit, a that we do not cover up unlawful conduct. We do not cover up violent behaviors. So whether he reached into the car, which is never established at trial or in the record is really no consequence because we didn't cover up the fact that he shot Bobby Moore. And Judge Miller pointed out that really the investigation into the Bobby Moore shooting and Mettler says this as well. The investigation into the Bobby Moore shooting cannot cause the shooting of Bobby Moore. That's that's illogical. And Judge Miller pointed that out correctly. Well, I think the theory is that the investigation is indicative of a pattern over a period of time that created the mindset of the officer at the time of the shooting. Sure. But again, if that's the case, we're glad we'll gladly take that head on. Bobby Moore did not did not cover up a violent pattern or violent behavior. Josh Hastings, as you point out in the beginning, we fired him. We had him charged criminally. So we did not cover anything up. The fact that we had an investigation and the fact that that the appellant knows the name of Miss McEwen is because of the breadth of our investigation, whether Sergeant I forgot the sergeant that didn't that amended. She didn't collect the blood sample, whether or not it was a perfect investigation is not the question at issue here. The question is whether whether a that was a facade investigation, which, again, because it uncovered violent acts of Mr. Hayes, Officer Hastings, it could not have done. But more more importantly, there has to be a similar pattern of similar unconstitutional misconduct. This court has said this in Andrews versus Fowler, Mettler versus Whitledge, Beck versus Pittsburgh says this. I mean, it's they have to be a similar pattern of misconduct. And the only similar instances to this one, which I submit they're not really are the other shootings at cars that preceded this one. They're all fundamentally different than the Bobby Moore shooting, because in each of those instances, the car was used or what the officers felt like and reasonably believe that the car was or was going to be used as a deadly weapon in each of these cases. And they were they were actively resisting using their cars in this manner to escape. That's not the case with Bobby Moore. He, as we determined, tried to get away. Yes. And then when he saw Officer Hastings, he tried to back up and then he was shot. We didn't cover that up again. And we point out the difference. And that's the reason that those previous shootings aren't similar to this one. And I go to I go to Roger Clark real quick in his deposition, keeping in mind that the question one of the fundamental questions of Monell liability is whether there's a similar pattern of unconstitutional misconduct. I asked Mr. Clark, can you identify from 2004 to 2012 or 2011? I think I said any instances of unconstitutional uses of deadly force. And he said, no, I didn't. I didn't. I didn't even review the files. I asked him why. And he said, well, I didn't think the files had enough in them to make that determination. Yet the appellant now gives this court a newspaper article regarding one of them as some evidence and newspaper articles, of course, a rank hearsay as some evidence as to what happened in that shooting gives no facts about what happened. And Judge Miller, to the extent that he could find it in the record, based on what the appellant pointed out, said, again, all those shootings involve cars being used as weapons. And that's fundamentally different than the Bobby Moore shooting. More more importantly, none of those previous previous uses of deadly force were found to be unconstitutional. There's no finding that they were unconstitutional. And without a finding of unconstitutionality, and there's no evidence that any of those investigations or facades either, without a finding that those were unconstitutional, the city cannot be on notice of a pattern of unconstitutional acts, which leads us into As your brief itself points out at page 46, Hastings was not exactly an exemplary employee. He was not. He should have been fired long before this. Well, yeah, I don't I don't want to speak to personnel matters. And I know at least in employment context, that the court is doesn't want to sit as a super personnel department. You know, the manpower issues, what what protection do the people of Little Rock have against the Hastings of the world? Well, when you look at the the the misconduct that he had, they weren't similar to this. And so you have to have that direct causal link. So what? His misconduct was not serious enough to put the people in jeopardy of their lives. Yes. In other words, if nobody's been killed up to that point, not even nobody's been killed. I mean, I mean, granted, that's the basis level of it. But he was never accused of using his weapon improperly. He was never accused of using deadly force at all. I mean, when you look at those 30 separate instances of misconduct, as the plaintiff puts it, nine of which, I believe, are are violations of the dash cam policy. Two times he showed up. He didn't show up for court. I mean, they're not instances of serious misconduct that would get. But it does a demonstrate a persistent pattern of disregard for the policies of the department and the safety of the the people of Little Rock or their well-being. In other words, they should not be subjected to the hastings of the world. Well, perhaps he wasn't a great officer, but like the Supreme Court, he said in board versus or Brown County versus Brown, just because he wasn't the best officer doesn't mean that there's liability. There has to be a direct causal link between that misconduct and the shooting of Bobby Moore. And there's just there can't be that. Well, direct in what sense? There has to be a prior shooting. As far as a similar misconduct goes, yes, that's that's what the court has said. It's got to be again, not because you don't write that case. What was the name of that case? Mettler says that Andrews versus Fowler says it. Connick versus Thompson says it. Brown, Brown County says that the city has to be on notice that this officer is going to commit this particular violation. And because he didn't turn on his dash cam a few times does not mean that he's going to going to shoot a 15 year old Bobby Moore. That's just there's just no causal connection between those two things. Now, again, back to this evidence of similar, there has to be a similar pattern of misconduct. I'll point out, too, that when when Mettler when they talk about when the court deals with Mettler or in Mettler and Rogers and in fact, it's about complaints that are being made and whether the city is or the they're all cities didn't investigate the complaints in each of these previous the previous car shootings. Nobody complained about the misconduct. And in each of the shootings, somebody survived that was in that car. There was no complaint made, no lawsuit brought. And so the idea that we couldn't that we didn't investigate a complaint is a nonstarter because there wasn't even a complaint. But we still investigated it. We investigated at the internal level, criminal level. The prosecutor sees it. And then we have a deadly force review board, which which which looks at it again. So the idea that we were we were delivered in debt. Well, the idea that there's any similar misconduct at all doesn't. So the three, I guess they're called EIS incidents. Those were, according to the record, investigated. Yes. Did any of those result in civil actions or any other proceeding outside of the investigation of the Little Rock PD? I don't believe the McSwain incident was in one of the reports. I could be wrong. I'm willing to be corrected on that. But McSwain was the only incident in which Josh Hastings, there's a civil or a citizen's complaint filed against him for the use of force. And that was the case that was litigated. And Judge Marshall found that there was no violation of the Fourth Amendment at all and dismissed the case. So the only time there's been a complaint for use of force, he was exonerated both by the city and then the federal court level. When was that case? I believe that was in 2011. OK, I'm sorry, I've got it. So I also want to mention really quickly the Ellison order of regarding the 2000 or December of 2010, maybe 11. Again, I'll be subject to correction on that one in which Judge Miller found that there was a similar claim of a pattern of unconstitutional misconduct. Judge Miller also found that there was no evidence of that. Now, the plaintiff says that we're trying to use that as a race judicata issue. That's not really what we're doing. What we're saying is there was a finding by a judge who looked at the evidence and found no pattern. But more than that, it's a showing that the city was not on notice of anything. If a federal judge looked at it and said there's no pattern here, there's no way for the city to be on notice of any such pattern. And so that's the point of the Ellison finding. Now, real quick about deliberate indifference. The Rogers quote, it was a misquote, but it wasn't a wrong application of law. Judge Miller corrected that on his order on reconsideration. Again, the shootings were all investigated criminally, internally. The prosecutor had a chance to look at it or did look at it. The deadly force review board looked at it. And I'll point to Roger Clark again. I asked Roger Clark about these facade investigations, which he never said the word facade in his report, first of all. I asked him, can you give me an example of when the city just flat out ignored a complaint? And he says, no, I can point to no instance in which the city got a complaint and absolutely nothing about it. And so the idea that Roger Clark said anything beyond the bare bones of what he thought he needed to say, as Judge Miller pointed out, he offers nothing. As far as the EIS reports, even though judge or Josh Hastings was found not to have violated policy in those previous, in any of those uses of force, he was still given remedial training at Oh yeah, it was the, it was McSwain. That's right. Cause after McSwain has given remedial training on the use of force, even though they found nothing wrong, they still sent him to remedial training, I guess, just in case. And another EIS report, they found that again, no violation, but again, they subjected him to biweekly meetings with his sergeant to make sure that he knows, you know, what he, what he needs to do and make sure that he's doing everything right. So the idea that we just sat oddly by and did nothing in light of, not even complaints, just our own internal understanding of, of what was going on, it's just not supported by the record. And one final point, the city is accused of covering up things. It's the largest department in the state. And the fact that, that the appellant and anybody else who wants access to it has the information to bring this or any other lawsuit shows that we don't cover things up. We investigate use of force, regardless of a complaint. We sent it to the prosecutor on deadly force review on deadly force instances. We have internal investigations and we document it and we have thousands and thousands and thousands of pages of documents. We do not cover anything up. And I just want to make that point. Would you acknowledge the, uh, the statement that having an investigation is by itself, not proof that the investigation was sufficient in its scope? Oh yeah. Well, I mean, I mean, of course we can't have facade investigations. I mean, we're covering up violent patterns of, of behavior on the officers. We're not really investigating anything, but the point to prove that you have to prove that they're violate, that there was a violent pattern and there's no showing that we committed unconstitutional misconduct. And it's not as if, again, going back to the shootings at the cars, there's no, no witness that was there that was in the car or the person that was actually shot who said this was wrong. And the city said, we don't care. There's not dozens of witnesses coming forward in the city saying, eh, we don't care. That's not what's happening here. And I see that my time is up. So I thank you for your time. Thank you, Mr. Wilkins, Mr. Lau, your rebuttal. Um, just a few follow-ups here. Um, the city is using the conclusions of investigations that we claim are corrupt to prove there's no corruption in the investigations. I think judge Smith, you hit it squarely on the head. The problem with the court's order is that it sets up a false choice investigations or no investigations. It neglects to understand the ways that, uh, friends of friends can cut breaks to their buddies when they are accused of serious misconduct. Um, now it's true that they did contact the two witnesses, but they didn't take a formal statement. I never said they didn't talk to them. I said, they didn't take a formal statement. And these were types of witnesses that should have had formal statements taken. They even admit to this in deposition, the deposition of Charles Ray. I ran through all the information that we got out of her at deposition. Why did you not take this? Uh, I don't know. Should it have been taken? Yes, it should have period. So they admit this, uh, in terms of causation, I got admissions and concessions from high ranking officials. One said that there is a precedential element associated with the LRPD meeting out light discipline for serious misconduct and lawlessness. Steve, uh, chief Stuart Thomas himself said that when he allowed misconduct to occur, he creates precedent that can be used by other officers. There's your moving force causation. Now, any problems that Mr. Wilkerson has with Robert Roger Clark, uh, the deposition that he refers to was not in existence when the court issued its opinion. So it therefore could not be part of the constellation of materials that were relied upon. And to the extent that Mr. Clark's bases are lacking in any way, shape, or form that is the proper province of cross-examination at trial. How does this, how does this deposition get in the record on appeal? Because, uh, because Mr. Wilkerson cited it in a response to my motion to reconsider. And then the judge latched onto that and use the deposition transcript as a basis to, uh, legitimize or to justify his summary judgment decision, even though he could not have read it at the time he made the decision. It sounds like a careful approach to the motion to reconsider to me. Well, I don't understand, um, with all due respect, judge, I don't know how you can use material that was not part of the decision to justify the decision. It wasn't in existence at the time. That's, that's, that sounded good, but that was a, that, that was a non sequitur assertion. Well, what I'm saying is, is if someone comes in a motion to reconsider with new evidence or, or a part of the existing evidence that wasn't in the initial summary judgment record, and the court then takes it into account in, in, uh, deciding the motion to reconsider. And you're saying that there's some procedural impropriety in that. I say, that's good. That's, that's good judging. Well, even if that, and I'll, I'll agree with your, your honor, but it shouldn't then displace what plaintiff has already submitted. It then is combined with what plaintiff has submitted. And that creates material issues of fact in terms of the, of the opinion of the, of the judge, of the, uh, uh, expert. So we go to trial on that. So the problem is not just that he brought it in out of left field, but he supplanted what we had originally submitted with it. Um, it wasn't used in conjunction. Uh, and it, it, it, the judge made no reference to the reporter affidavit in his order. Um, the Metler case is very important because it says that faulty, cause it follows the line of Beck. It follows the line of, of Rogers and says that these investigations have to have teeth, but Metler goes even further and says that irregularities in physical evidence collecting and the like is a means and grounds for Monell liability judge. I've done this a few times, and I know when I'm nowhere near home base and I know when I've crossed all the bases, we submitted phone books of evidence, all of it legitimate. And from the mouth of babes, so to speak from their very people, there's no reason we can't get that. We shouldn't be able to get this case in front of a jury. We did the hard work. We rolled up our sleeves. We took 20 depositions. We didn't cut any corners. We did the hard work. How this does not get in front of a jury is, is, is baffling to me with all due respect to judge Miller. Thank you, Mr. Lyle. Thank you very much. Court. Thanks all counsel for your presence this morning, the argument, which you've provided to the court, uh, the briefing, which you've submitted and we'll take the case under advisement and do the best we can. Thank you.